Good morning, sir. You may proceed. Good morning, Your Honors. Gary Smith. I represent Plaintiff David Duncan and his wife, Nancy, but I will be arguing today on behalf of all three plaintiffs. Very well. This case emanates and arrives here as a result of summary judgment granted to the defendant, American Greetings, by Judge Miller in this tragic personal injury cases, to which we take exception. And it begins with the elementary review of Rule 56, it being a negligence action which Rule 56 is not favored and is not to be utilized in any circumstance as long as there are material issues of fact and dispute of which there are many in this case. But Judge Miller granted summary judgment holding as a matter of law that there was no duty on the part of American Greetings to warn of the danger of arc flash. And I want to address those points. What he did not do in his analysis and ruling in this case was analyze what constitutes duty. And the law is legion on that, but there are two elements for examination. The first being the relationship with the parties and the second being foreseeability. I do not believe that there is any dispute in this case that the relationship was one of invitee, though part of the order from Judge Miller would indicate otherwise and I will address that. As an invitee, a duty of reasonable care is owed by law. Foreseeability takes care of itself in this case. What I want to do is hone in on what we respectfully submit are very serious mistakes made by Judge Miller in ruling on this case, which begins with this. Either five or six times in the order, Judge Miller is mistaken in what he considers the employment status or the training status of these plaintiffs to be. He refers to them as electricians. They are not. They are linemen. That becomes important when he makes his pedigee comparison to this case. Secondly, over and over again in the order, Judge Miller says that these men were hired to do a specific job. It is undisputed that that is not correct. They weren't hired to do anything. They were invited there by American Greetings' own testimony to help them figure out why, because there was a broken stinger on one of the poles, that the plant had not lost power. But they had not been hired to do anything. Again, Judge Miller uses that to strap this case to pedigeeing. Is that really significant? It does. Don't the cases categorize independent contractors that come in to perform their work for compensation? Don't they categorize them as invitees where you have a situation like this? They can. Does it really matter whether it's coming to help me or here's a work order, come in and do your work? That's a maybe, maybe not. The way in which Judge Miller used it was significant to him. I would agree that under the law it may be a distinction without a difference. But, again, to try to make it fit the pedigeeing exception to the duty rule, it was significant to Judge Miller. And then, third, he emphasizes again and again and again that the plaintiffs in this case knew about the risk or the danger of arc flash. And, therefore, there could be no duty to warn them. And there's no question, as electrical workers, they knew about the generic risk of arc flash. That is not the point. We have never contended in this case that American Greetings should warn them that when you work around electricity there is a risk of arc flash. Rather, what we have contended is that the unique circumstances that existed in this case, of which the plaintiffs were unaware, and about which American Greetings was aware, was the danger. And so he has mischaracterized the danger. In fact, he says on page 6 and page 9 of the opinion, and I want to quote it, quote, American Greetings owed no duty because the danger of arc flash was known to the plaintiffs and was an integral part of the work they were hired to perform. Number one, they were not hired to perform work. But important to this point is arc flash was not an integral part of the work. That language, again, comes from Pettygene where what they were hired to perform, work on energized lines, was an integral part of the job. You're specifically hired to work on energized lines. We were not hired to work, in this case, on or create an arc flash. What I respectfully submit that the judge has done is he has, as we pointed out in our brief, conflated the doctrine of comparative fault with an assessment of duty. Again, on page 9, after saying that he believes that there is no duty on the part of American Greetings, he then addresses our contentions in the case of the various violations of American Greetings and said here are the plaintiff's theories. But they fail in this case because they didn't have anything to do with causing the arc flash. Your Honors, that is 100% absolutely positively wrong, and there is no other way to say it. Again, may I restate that so I don't miss it? It's clear. These issues that we contend that Judge Miller has said fail because they didn't have any causative effect is just wrong. And let me address them. Any one of the things that we have said American Greetings did wrong, if done, would have avoided this ever occurring. Period, paragraph, end of quote, no question about it. And they are these. If they had simply labeled the transformer as they're required to do, showing the voltage on the exterior, this never happens. If they had done the lockout tagout that they're required to do by OSHA, by the NEC, and by their own written policies and procedures, this never happens. If they had had the one-line diagram that they are required to have but did not, this never happens. If they had done the arc flash analysis that they are required to do but did not, this never happens. If they had dropped the load, de-energized the equipment as David Duncan asked them to do and they declined, this never happens. If they had simply told them that the voltage was 4,160 instead of the 480 that the plaintiffs thought it was, this never happens. And further, and this is even an expansion of the point. Lance Collins was there, standing there when David Duncan was told to go get the voltmeter. He comes back with what's obviously a low voltmeter. Mr. Collins knows the difference. The low voltmeter looks like your TV remote control. A high voltmeter is several feet long. Sees him approach. He's heard him told to check the voltage on this transformer. He sees him come back with what has to be a low voltmeter. He says nothing. And this happens. He had control, another distinction from Pedigene, because he has declined to drop the load. He denies that. The plaintiffs contend that he did say no. Shook his head no. That's a disputed issue of fact, which makes summary judgment inappropriate. And it shows control, which is another distinction from Pedigene. Page 10, and this one, I cannot state emphatically enough how wrong this one is.  That American Greetings owed no duty. And, again, I want to quote what he says. No juror could reasonably find that American Greetings, a landowner with no specialized knowledge of electrical lines, should have been aware of the danger of arc flash or anticipated that plaintiffs would encounter arc flash. Every bit of that is, there's no dispute about the fact that that's wrong. Number one, they're not just some naive John Doe, Jane Doe landowner. This is a large, sophisticated company with a huge electrical operation that they owned. American Greetings owned it. American Greetings maintained it and worked on it. American Greetings had electricians on staff, including the two people involved in this incident, Ronnie Hausman and Lance Collins, one of which is a journeyman electrician, the other of which is a master electrician, and it goes without saying that they conceded in their testimony that they certainly understood the risk of arc flash, including the risk of arc flash if you approach a 4,160 volt secondary side of a transformer with a low volt transformer, that that could cause an arc flash. So everything that he says in that important part of his ruling does not fit the facts of this case. And the last thing I want to say about that, as I'm getting into my rebuttal time, is that we offered, we pointed this out in a motion to reconsider and requesting oral arguments, saying, Judge, all these things that you set out in your order are wrong. Please let us come talk to you about it and explain and show you this testimony which we had cited previously. Without comment, that request was denied and it went on. I must ask you about two things in line with your argument. The first is, my recollection is that we have some testimony from Mr. Duncan in the record concerning his training to work with transformers and his knowledge of job hazards and its analysis. And it's my recollection that the testimony was that that training required him and individuals in his position to analyze the job environment, identify lines, voltage, and to make sure that tools were rated for the voltage that were involved in the work. What do you do with that acknowledgment? All of that is absolutely correct, but here are the two responses to it. Number one, that only goes to whether or not David Duncan breached a duty for his own care, which is the function of comparative fault. The trial judge went a step further and found that they were negligent. The second part of it is, and I think where you were really going with this is, yes, he said all those things and they're all true, but they have to be judged in terms of whether he breached a duty for his own care. Well, what's wrong with the, what troubles me is it seems like, it seems to me that Mr. Duncan's testimony very succinctly identifies why there's a problem with placing the duty on the, in this case, American Greeting, where an independent contractor comes in who has particular and specific knowledge and is trained with respect to these kinds of hazards, and that's why they're brought in to work on projects like this. But the circumstances that Dave Duncan faced was he came to the scene of a job where his boss and the American Greetings boss have already conferred and presumably covered all of this and is given a specific instruction not to perform a repair, but to simply test the voltage on this transformer, a routine function, on a transformer that everything about his training would indicate is 480. The only people who know it's not are the American Greetings people. And so the knowledge in this case that is peculiar to this case about it being a complex, and you'll see that word in the brief, that's not just a made-up word. That is an industrial term of art. This configuration is known as a complex parallel configuration, which if American Greetings had told them or supplied them the proper documents they were supposed to supply them would have told them why there had not been a drop in power, and you don't even need to test the voltage. You simply flip the switch off, de-energize it, and whoever's going to climb the pole and fix the broken stinger fixes it. The knowledge, this was a latent problem, not a patent problem. It was a latent problem. So did David Duncan violate his own duty? That's a jury question. That's a jury question, but it has nothing to do with whether or not American Greetings also violated a duty imposed on them under common law, under the OSHA regs, under the NEC, and under their own written policies and procedures. Second question. Wasn't there present on or about this transformer a nameplate that revealed the primary and secondary voltage? It does have that on there, but two points to that. Number one, the regulatory requirement is that the voltage be posted on the outside. Number two, these men have never seen anything other than 480. They're assuming 480. Apparently Mr. Collins assumed it was 480. And third, that nameplate does not satisfy the regulatory requirement of warning. As you'll see in our appendix and in the testimony of Mr. Mignotta, only the exterior warning satisfies the regulatory requirement. While it does have that information on it, and there's a question about it being hidden inside the doors when it's closed, it is designed by regulation for people who are doing the complex work on knowing what the temperature requirements are, what the oil requirements are, et cetera. It's not really there to warn on voltage. That has to be on the exterior. But the fact of the matter is it's there. I hope I will be. We'll give you a couple of minutes on rebuttal. We took a lot of it. Thank you. Took a lot of it in an effort to try to clarify our thinking, I hope. We'll hear from the appellee, Mr. Chiles. Chiles. Very well, sir. Mr. Chiles, you may proceed. Thank you, Your Honor, and may it please the Court. Generally, the duty to invitees by a landowner is to exercise ordinary care for their safety and to warn them of any hidden dangers or unusually hazardous conditions. This duty of ordinary care or to warn of latent dangers, however, does not contemplate a duty to warn of known and obvious hazards that are integral to the work. This fundamental principle of Arkansas law appears not only in cases about electrical workers like Jackson and Stultz, but also in cases about other types of workers, including roofers, a person hired to stain the entrance of a subdivision like Crenshaw, D.B. Griffin Warehouse, and Culhane. Are you saying there's no sliding duty of care then? In other words, the duty of falling off a roof as compared to touching a 4,160-volt transformer? I'm saying, Your Honor, that the way the duty is articulated by the cases can apply in a variety of contexts. The plaintiffs in the district court and on appeal have taken us to task and taken Judge Miller to task for trying to say that electrical workers are somehow insulated from any negligence. And the point I'm making is that Arkansas law articulates a duty that applies in this case and applies in a variety of contexts. And sound policy supports that rule. It wouldn't be reasonable to impose on landowners a duty that could impose them to civil liability to get into the intricacies of the work of independent people who are not their employees. Duty is a question of law. It is never a question of fact for a jury. And here the duty is spelled out in the Arkansas cases. So pure and simple, your argument is your client had no duty whatsoever of warning these people of anything? No duty to warn them of known obvious hazards integral to their work. So what then was the hazard to which the electrical workers in this case were exposed? Well, they were injured by an arc flash. That's an indisputable fact. An arc flash, I think I know what it is, but tell us briefly what it consists of. There's a jumping of an electrical current from one place to another. Exactly right, your Honor. That's exactly right. They say, of course, now that the hazard to which they were exposed was an arc flash. It was something different, even though that's indisputably what injured them. And it's indisputably a hazard of which they were aware and trained and bound to guard against. The only other hazard that could even arguably make any sense is the secondary voltage of the transformer. Determining the voltage of equipment like transformers before engaging that equipment was an integral part of the electrical work that these people did. It's admitted in their depositions. There's no way to get away from it. They admit in their briefs that their job required them to determine the operating voltage before engaging the equipment. They admit in their briefs that it's obvious that approaching an energized transformer with a tool not rated for the operating voltage would expose them to arc flash. They admit that they merely assumed that the secondary operating voltage was 480 volts when, in fact, as stated on the specification plate on the transformer, which none of the electrical workers bothered to look at, it was 4,160 volts. It's undisputed that their supervisor, their employer's representative who was on site supervising their work, directed them to get a volt meter and check the voltage. It is undisputed that they selected the wrong tool. And as they say in their summary judgment response brief, if they had chosen the right tool, the arc flash never would have happened. Both the hazard of arc flash and the hazard of undetermined or misunderstood or incorrectly assumed voltage are known and obvious to these people and integral to their work. American Greetings didn't know a duty to warn of these types of obvious hazards integral to the electrical work of electrical workers. I would like to comment on a few points that Mr. Smith made in his argument. There are what I would call pot shots at Judge Miller's order. But they really are issues of picking at words rather than legitimate criticisms of his reasoning. The plaintiffs want to complain that the electrical workers weren't hired. Well, they were invitees. That's undisputed. So whether they were paid by American Greetings is irrelevant. The fact is they were paid by their employer, who was charged with ensuring the safe performance of their duties. That's not an obligation that American Greetings undertook. Nor does it matter that they were not technically licensed electricians. They were employees of the municipal electrical utility, people who might logically be called when there is an electrical issue. In fact, these particular plaintiffs testified in their depositions that they worked on a crew whose job, day-to-day job, included dealing with overhead electrical poles and lines. American Greetings called them to assess a situation with a burnt stinger and blown fuse on an overhead electrical pole. Let's see. And a stinger is? I've forgotten exactly how to describe it in my own mind. The line that goes from the fuse and feeds the main line going down to the transformer. But it's an overhead electrical piece of equipment. So the gentleman in Stoltz, one of the cases relied on in our briefs, was not a trained electrician, a licensed electrician. This is irrelevant. These people are electrical workers with decades of combined experience working around electricity. And they forthrightly testified in their depositions about the hazards that were integral to their jobs and the steps that were required in their jobs to ensure that they did not expose themselves to those hazards. It was not American Greetings' duty as a landowner to involve itself in the intricacies of their work or to ensure the safe performance of their work. They were not our employees. Nor, as Mr. Smith suggested, did Judge Miller make the error of conflating comparative fault with the analysis in this case. I was going to ask about that, and you'll explain why the district court didn't err. Here, the issue is duty. The duty articulated by the Arkansas courts did not include a duty to warn of any known obvious hazard integral to the work. Arc flash, a known obvious hazard integral to the work. Determining voltage or failing to do so before engaging equipment, a known obvious hazard integral to the work. The fact that this transformer was energized, an undisputed fact that it was known and obvious to the electrical workers. There's no need to compare negligence or to compare fault. The duty, which is always an issue of law, not an issue of fact, is spelled out in the Arkansas cases. It plainly, that rule applies in this case. And American Greetings didn't breach any duty owed to these plaintiffs, so there's no need to get into comparative fault. Well, then we'll turn, I guess, to the electrical code and OSHA requirements that your client either complied with or didn't. Well, OSHA, your honor, is a statute that governs conduct as between employers and employees. These electrical workers were not employees of American Greetings. OSHA does not create private rights of action. By its own terms, it does not expand, modify, or enlarge duties at common law. We have today, and in our brief, indicated what Arkansas law clearly says is the duty that's owed in this case, and that was not violated on the undisputed facts. So, with respect to regulations, our courts have held in both Stoltz and in Horn v. Shirley, that the Arkansas Labor Act does not create duties between a landowner and others. It creates duties between employers and employees. Internal regulations, according to the Strashner case in 1965, the Young case in 2005, and the Bedell case in 2012 from the Arkansas Supreme Court, internal regulations, internal policies do not create legal duties. So, while OSHA, the labor regulations, and internal policies may create standards of conduct that could apply in certain circumstances as between certain people, they do not create legal duties that can expose a landowner to civil liability that is beyond the duty articulated in the Arkansas common law in cases like Jackson, Stoltz, Crenshaw, Culhane, and D.B. Griffin Warehouse. If this case had involved one of American Electric's own employees, then what effect would the lack of OSHA warnings have resulted in? The Arkansas court would say that OSHA is irrelevant to our common law of liability. Well, the issue there, I guess, would be a workers' compensation type of issue, and OSHA specifically says that it doesn't alter or affect workers' compensation laws. So, just as the situation between the electrical workers here and their employer, the city of Osceola, they had a workers' compensation proceeding, and that was the proper remedy for the events in this case. Back to the question of what duty did American Electric owe to these persons who were injured? Your Honor, I just want to make clear, it's American Greetings. The company manufactures greeting cards. It's not an electrical company. I just wanted to make sure you were clear. I misstated. I guess I think American Electric Power Company. American Greetings, okay. What duty, if any, did they owe to these people? The duty articulated in the case law of a landowner to invitees is to exercise ordinary care for their safety and to warn them of any hidden dangers or unusually hazardous conditions. However, that duty does not contemplate, and the language in the case is over and over, it does not contemplate. The duty of reasonable care or the duty to warn of latent dangers does not contemplate a duty to warn of known or obvious hazards integral to the work. Here, these electrical workers were not exposed to any hazard that was neither known nor obvious and not integral to their work. They were injured by an arc flash. It is undisputed that the arc flash happened because they incorrectly selected a piece of equipment that was not rated for the task their supervisor instructed them to undertake. And it is undisputed that part of their job required them to determine the operating voltage of equipment before ever engaging that equipment. And had they looked at that, where was this sticker or nameplate? The nameplate is affixed to the inside of the exterior door. There are two doors covering the secondary side of the transformer. Did they open that interior door? Yes. Was it visible to them or not? Someone employed by the utility opened it. It's not abundantly clear from the testimony who opened it. What we do know is that Mr. Griffin requested of his crew, that is the utility crew supervisor, requested of his crew a specialized socket wrench that is needed to open the exterior door. You can't just walk up and open it. It requires a special tool. Is it safe to open it without wearing these electrical gloves? Just to open the exterior door, it is. So when the exterior door is open, there's a manufacturer's nameplate there that provides the operating voltage of the primary and secondary sides, among other information. There is also a red inner barrier flash guard door that reads danger high voltage. And then that door has to be opened as well before you actually get to the transformer terminals. So the plaintiffs want to say that the manufacturer's specification plate wasn't visible when they walked up to the transformer because these doors were already open. But to say it wasn't visible implies that in some way it was hidden, when in fact all that would be necessary to look at it is to look between the doors and see that it's there. They admit that they knew that the piece of equipment had a manufacturer's specification plate. They admit that they just didn't look at it. They incorrectly assumed that the secondary voltage was 480. They never bothered to check. How do you distinguish the first Griffin case? There, a roofer or a painter fell through a skylight, but the Arkansas Supreme Court sent the case back for trial. I understood in that case, Your Honor, that the court's ruling was that the landowner had no duty to warn of the skylights because exposure to the skylights was an integral part of the work. Well, you know, there were two Griffin cases. Right. I apologize, Your Honor. Perhaps I'm not keen on the one that you're referring to. In the second case, the court determined there wasn't enough evidence to find a hidden or latent danger. But in the first case, the court sent the case back because it said there were disputed facts regarding whether, regarding the hidden or latent dangers involved in the painting of the appellant's roof and whether or not those dangers were known or could have been discovered by the appellant with reasonable care. Fair enough, and I apologize, Your Honor, for not having the case at my immediate recall. But what I can say is that here, the dangers indisputably, according to the electrical worker's own testimony, were known and obvious to them. I mean, it is part of what they do in their jobs to determine the operating voltage of equipment before engaging it, an undisputed fact. And here, there can be no hazard that exposed them to injury besides exposure to arc flash or exposure to the secondary voltage. Now, the plaintiffs want to point to what they would call various acts of negligence. But, Your Honors, all of those arguments on their behalf devolve to the idea that American Greetings somehow failed to warn. And here, there was nothing to warn of that wasn't a known and obvious hazard integral to their work. This court should affirm. Thank you. Oh, thank you. Thank you. Mr. Smith, we'll give you a couple minutes for rebuttal. Mr. Childs is wrong about the law in Arkansas referable to OSHA applying the Dunn case, which we cite on page 15 of our supplemental brief, says it is appropriate consideration and jury instruction as it is embraced within the common law duty. That's just the law in Arkansas. He says that their policies and procedures don't create a duty. Well, you can assume a duty, number one. But, number two, their policies and procedures incorporate the NEC and OSHA. And they violated them in a number of ways. Hines is still good law, and that's an electrical case. They chided us somewhat in their brief for saying the case was a 1925 case. Stare decisis says it's good law. Pettigine did not, or any other case, ever overrule it. It's not to be forgotten, Lance Collins is there the whole time the plaintiffs are. Who is this? Lance Collins. He is the maintenance manager, master electrician who works on this system every day for American Greetings, who's supposed to know this system, who watches them approach it with a low volt meter. He says nothing, but he did get out of the way. By his own testimony, he moved to get out of the way. Was he aware that they had selected a? Low volt meter. Yeah. Go back. He was questioned about that, and he said, oh, he could have had a grass cutter for all I know in his hand, but he knows what a low volt meter looks like. It's the TV remote size versus one that's three feet long. He knew he did not have a high volt meter, and he knew that he had been told to check the voltage in that door. The undisputed proof is that when the plaintiffs came up, both doors were open, so the nameplate's not visible. Now, last point I want to make, and please let me give you two analogies. I could give you 100, but if you take Judge Miller's ruling as it is, then think of all the circumstances where this would create no duty. If this were a case of a pilot, a pilot knows about the risk of crashing if you stall the airplane because you don't maintain sufficient airspeed. But if the pilot knows that 100 knots is the appropriate airspeed to stay above, but yet in this plane it goes up to 110 if you're in a bank in an ascent, would anyone seriously argue that the owner and the manufacturer had no duty to tell him of that latent difference, just like we have here? Last one. Surgeon. Every day, right now, in this town, a lot of surgeries are going on. In every single one of them, the operative site is swabbed with an antibacterial medication preoperatively by the operative team. The surgeon comes in the room. 99.9% of the time, that solution is non-flammable because it's not alcohol-based, but there are a few products out there that are alcohol-based. If it's alcohol-based, you have to wait 10 minutes for it to dry. There are lots of reasons for fires in the operating room. Surgeons know that there's a risk of fire in the operating room. But if the hospital changed the solution on that day and came in with an alcohol-based one, they are on the market. The surgeon pops that bovie to start the case because it hasn't dried, and the surgeon and the patient are burned up. Would anyone argue that there is no duty on the hospital to tell the surgeon that we've changed to a solution that now creates a different risk? We respectfully submit that the ruling of Judge Miller is wrong, that there are multiple issues of material fact with respect to duty and to negligence, and this case should be remanded for trial. Thank you. Very well. The case is submitted. We will take it under consideration.